We will hear argument first this morning in Case 12-418, United States v. Kebodeaux. Mr. Dreeben. Mr. Chief Justice, and may it please the Court. Convicted sex offenders pose a serious threat to public safety. When those convictions are entered under Federal law, Congress has the authority to impose both a criminal and a civil sanction for that conduct in order to protect the public. The Fifth Circuit in this case applied a per se rule that once Respondent had completed his military sentence, Congress lost authority to apply a civil sanction for that violation of Federal law. That per se rule is wrong. Nothing in Article I prevents Congress from legislating retroactively with respect to civil remedies for past violations of Federal law. The ex post facto clause, the due process clause, and Article I analysis under the necessary improper clause all provide some degree of protection against retroactive provisions, but no per se rule bars Congress from applying sex offender registration requirements, which this Court has held to be civil remedies not barred by the ex post facto clause to past Federal criminal convictions. Now, the limit of that power, how for any Federal conviction, whether it's related to sex offense or anything else, Congress can impose any kind of registration requirement? Well, certainly, Justice Sotomayor. Sotomayor.         Sotomayor. Sotomayor. Sotomayor. Sotomayor. I would ask every convicted Federal felon to come in for a DNA test, because we know that people who have been convicted of a crime are more likely to be recidivist. Well, Justice Sotomayor, there are independent constitutional limits, both outside of Article I and within Article I, that mean that I will answer your question, no, it's not the case that my position today means there are no limits. There are limits. So what is the limit? Is it just safety? It can't be just safety of the public, because you just said that it doesn't apply to recidivist Federal offenders generally. The principal limitation on retroactive legislation is the ex post facto clause. Indeed, there would have been no need for an ex post facto clause if the Fifth Circuit were correct. I don't understand it. I just posited a civil registration for Federal offenders of any kind. That's not ex post facto under your theory. So if the Court agrees that it's not a punitive measure and it is a remedial measure. Sotomayor, I don't know if I agree with that, but accepting that hypothetical. Well, if you don't agree with it, then you'll be going on the ex post facto clause and you won't be getting to Article I. No, that's settled law. Whether it's right or wrong is a different issue. It is settled law, and that means that sex offender registration provisions aren't punitive. The question here is are they within Article I? And the Court in United States v. Comstock went through an elaborate, necessary, improper clause analysis. Well, in Comstock, it was very different than the situation here, because the analysis was that the Federal government basically was the source of the problem in incarcerating sex offenders away from the State so that no State felt an obligation to do something with the problem of their release. You don't have anything of that sort here. No. This provision, Mr. Chief Justice, rests on a different analysis than Comstock. In Comstock, the problem was caused by Federal custody that, as Your Honor has said, broke the relationship between the individual and some State that might take cognizance of him for purposes of sex offender civil commitment. The basis for the statute in Comstock was that people in Federal custody, regardless of the nature of their prior convictions, might pose threats if released. The basis for the statute in this case is not that the individual was in Federal custody. Federal custody is irrelevant to it. The basis for the statute in this case is that this is a sex offender in violation of Federal law, and Congress has the authority to impose, as was done in this case, criminal punishment, but it also has the authority to impose civil regulatory sanctions. Scalia. I assume that applies to all Federal crimes, right? Anyone convicted of any Federal crime can thereafter be subjected to whatever civil restraints Congress later decides are a good idea in order to prevent that crime, that type of crime from reoccurring, right? I mean, there's nothing peculiar here about sex crimes. Any crime, Congress can later decide, you know, to be a good idea if when a person has committed, I don't know, a crime with the use of a gun, we impose retroactively all sorts of different civil limitations. Well, Justice Scalia, there is no per se rule in Article I that forbids retroactive civil regulations imposed on a Federal offender.  That's not the point, that it's retroactive. The point is that it is not an execution of a Federal power. Well, I think the whole point in this case is that it's retroactive, because there isn't any serious dispute that if somebody commits a Federal sex offense, they can be placed on supervised release for life. That would be an execution of a Federal power. Well, so what's if? The power to prevent that crime and to punish it. Well, but Congress's power is not limited to preventing and punishing crimes through criminal law. Except for a brief interlude under United States v. Halper, where this Court viewed double jeopardy as precluding multiple criminal and civil sanctions, the Court has recognized that when someone violates Federal law, they are exposed both to criminal punishment and to civil sanctions. The criminal punishment has to comply with the ex post facto clause. The civil sanctions do not. So what the Court has to do is to say that they have to be imposed simultaneously as the punishment for the crime of which the individual has been convicted. Here, the trial is over, the conviction is over, and then some years later, the Federal Government decides, oh, it would be a good idea if people who have committed sex crimes are subjected to these limitations. That's quite different from imposing that simultaneously as a punishment for the crime. This is not a punishment for the crime, right? That's precisely what makes it a civil sanction. But, Justice Scalia, Your Honor is presupposing that Congress can only react to a sex crime through the criminal law, and that it must have those laws in place at the time of the punishment. And there is no such Article I precept. So your argument depends in no way on the fact that he was convicted of a Federal offense or incarcerated for that offense, nothing at all. We're just here arguing about the retroactivity under – whether they have the authority under Article I to impose punishment for not registering under State law? This case turns entirely on the fact that the defendant is a Federal offender. The source of power in question was the power to regulate the armed forces. This is an individual who committed a sex crime while in the armed forces. And Congress's power to address that and to prescribe remedies for it, both civil and criminal, is entirely tied to the Federal nature of the offense. Alito, we start out with the power under the Constitution to make rules to regulate the military. We end up with a registration requirement that applies to someone who is not in the military and perhaps is not even living anywhere near any military installation. So what would be helpful for me is to start out with the constitutional provision, identify a purpose of that that is served by this civil registration that is imposed later, and trace this whole progress through the Necessary Improperty Clause. Justice Alito, I think the most helpful way to do that would be for me to progress through a series of examples that illustrate how protecting the public against a Federal sex offender is a legitimate aim under the Necessary Improperty Clause to implement the underlying constitutional authority. So start with a sex offender who commits a sex offense in the military, is tried, court-martialed, and sentenced. Subject to cruel and unusual punishments limitations, due process limitations, et cetera, that individual can be incarcerated, placed on supervised release, potentially up to life. A condition of supervised release, well recognized and now mandated by Federal law, is that that individual register as a sex offender. And the reason that that is tied to Federal law is that when an individual violates Federal law, it is a legitimate purpose of Congress to protect the public against recidivism by that individual. So that's the criminal example that I believe is undisputed. Now, suppose that the Federal Government didn't actually get the sex offender while he was in the military. It missed the crime. But later, information comes to light, still within the statute of limitations, that shows that while this person was in the military, they committed a sex offense. This Court in the United States, Ex Rel Toth v. Quarles, made clear that that individual can be tried in an Article III court for his criminal violation, even though he's out of the military. It's enforcing the rules that were impressed upon him at the time while he was in the military. Now, let me give a civil example, and then I will bring it right back to this case. Suppose that Congress concludes that sex offenses in the military are a very serious problem and that there are a lot of people who have escaped prosecution because of lax interest in pursuing those crimes. And after a period of years, it sets up a board of inquiry, and it says, this board of inquiry is going to look into sex offenses that were committed at the time that people were in the military, even if they're out of the military, and we're going to subpoena people to testify, and if individuals are determined in a civil proceeding to have committed sex offenses, they may have their military records revised, they may lose military benefits, and they may have other civil sanctions imposed upon them. Scalia. When you say in a civil proceeding, you mean? Yes. Non-criminal, non-criminal. So it's just by a preponderance of the evidence, we think this guy probably, you know, 5149, committed a sex crime. It's not going to be a criminal punishment that's imposed at the end of the day. So just more likely than not is the case. That's an acceptable level of proof for the civil law. And if Congress can do that in order to protect the integrity of the military and to promote confidence in the military, then it's a very small step, if any step at all, to Sornop. Yeah, but if they can do that, but that's not what they've done here. Your argument, as you told me a while ago, is linked to the Federal offense and the incarceration. Yes, absolutely. Well, it's Mr. Chief Justice, it's not linked to the incarceration. This is the difference between this case and Comstock. And this is why the Solicitor General's concession in Comstock, on which the Fifth Circuit heavily relied, has no applicability here. In Comstock, it was irrelevant what offense the individual had been committed. The problem was he was in Federal custody, he was sexually dangerous at the time he would be released, ties had been broken between him and the community, and if he were released, it would pose a threat to public safety that the Federal Government had power to protect against. It's because the States were not doing anything about it. Right. Here you have a situation where I think at the time every State dealt with the issue of whether the sex offenders should have to register or not. That's correct. But Federal law did as well, and Federal law provided encouragement. This is actually a primary example of partnership between State governments and the Federal Government. The Federal Government offers financial support, it offers logistical assistance, it offers tremendous resources of the U.S. Marshals to track down sex offenders. And as this Court said in Carr v. United States, it was entirely reasonable for Congress to have assigned a special responsibility for prosecuting Federal sex offenders who failed to register. This was integral to this Court's reasoning in Carr, where the Court was confronted with two provisions of 2250, the criminal sex offense provision under SORNA. For State offenders, there had to be travel and interstate commerce. For Federal offenders, there didn't. The Government argued that the provisions ought to be given as coextensive a reach as possible so that the coverage of the statute would be equally comprehensive for both State and Federal. And this Court ---- Kennedy, the discussion so far has assumed, your discussion primarily, that there's this line between civil and criminal, and we don't need to worry about ex post facto. Is that line made clear in our precedents, or is there some room to argue that if the line is somewhat blurred, that there may be ex post facto concerns here, and that that, in turn, is a reason for constitutional avoidance when we evaluate your arguments? Is that ---- is the civil criminal distinction with reference to ex post facto clause absolutely foreclosed and clear in the facts of this case? Yes, it is, I believe, Justice Kennedy, in an opinion that you wrote for the Court, Smith v. Doe, which considered the retroactivity of Alaska's sex offender registration and notification provisions, which are similar but not identical to the Federal provisions. The Court went through the established analysis to determine whether the legislature had intended a punitive effect, and if it didn't, whether there was the clearest proof that it was punishment in purpose and effect, notwithstanding the legislature's intent. The Court upheld the retroactive applicability of sex offender registration and notification, making clear that it is not governed by the ex post facto clause. Now, that's not to say that an individual couldn't argue that SORNA is different, or an individual couldn't argue that the due process clause makes it either irrational or substantively off-limits to impose this kind of civil remedy. The individual can also argue that running this through the Comstock factors, it's not reasonably adapted to fulfilling Congress's aim, but what the Fifth Circuit did is apply a per se rule that it drew, I think, from the Solicitor General's statement in Comstock that once an individual got out of custody and was back in the jurisdiction and population, then the Federal Government couldn't reach out and commit him as a sex offender, and there are two main distinctions between that concession and this case. The first is, as I've already alluded to, the government's argument in Comstock was based on custody. This case is based on the consequences of the conviction itself. The second distinction is that committing somebody civilly is a massive intrusion on that individual's relationship with the State. The individual has been brought within Federal custody. They have no relationship with the State anymore, whereas sex offender notification is far more accommodating of State interests. Sotomayor, what does this civil, civil criminal line apply? Suppose instead of a registration requirement, Congress just decided, you know, our past punishments for sex offenses have not been, have not been severe enough. And so we are now going to impose a civil fine on all, all persons who have been convicted in Federal court of sex crimes. It's a civil, it's a civil penalty, not a criminal penalty. That's okay. It's not per se barred by Article I, Justice Scalia. The question of whether it's constitutional is really a question of individual rights analysis and whether it passes through the necessary and proper gate under the considerations similar to what the Court looked at in Comstock. Scalia, I find that difficult to believe, that whether it's ex post facto and impermissible or not is simply eliminated. That issue is eliminated by simply calling it civil. Well, it's not eliminated. It still is available for an individual to argue, as Respondent did in this case in the district court but abandoned long before he got to the court of appeals, that it violates due process, that it violates ex post facto. Scalia, what about the ex post facto? He can argue that. I submit that he will lose under that. Because it's civil. If it in fact is civil and passes through this Court's analysis, then yes. I find that difficult to grasp. Well, it's well – it's actually quite well established as a principle of double jeopardy law in cases like Hudson v. United States and United States v. Ursary. It's established in ex post facto law as a consequence of Smith v. Doe. It's the foundation for deciding whether a proceeding requires preponderance of the evidence versus proof beyond a reasonable doubt.  Would your argument about – your argument based on Congress's authority with respect to the military, your Article I argument, and you say it doesn't make a difference, that he's no longer in the military, does that – do you come out differently if the basis for jurisdiction is asserted to be interstate commerce? No. The fact that somebody at some time in their life traveled across State lines means that the Federal government can go back, even though their activity that's challenged in the particular instance is only intrastate, and still assert jurisdiction over them? Well, that would probably fail a necessary improper clause analysis in which there has to be a showing that the measure is plainly adapted to furthering the underlying power. This is not a difficult problem that the Court has never confronted before. It has resulted in difficult permutations on particular facts, but the Court has always recognized that there is broad necessary improper clause authority subject to limits. Those that's – As broad as that authority is, perhaps I'm going back to Justice Alito's question, which is, if you put aside that it's part of the punishment, because you say it's not part of the punishment, you want us not to look at it as punishment, because otherwise you'd run into the ex-pros facto problem. You're saying, we have a need today. Outside of protecting the public from a recidivist, what's the interest? Because that wasn't enough in Comstock. We made it very clear that wasn't enough. So if you take out all of the punishment aspects of this, which you should have done at the time he was sentenced and not now, what remains in terms of the Federal interest? Justice Sotomayor, there is a sufficient Federal interest in protecting the public from someone who committed a Federal crime. Supervised release essentially performs that function. But that was – why did we even bother going through anything in Comstock? If that stands alone as a Federal interest, then anything we do at any point with respect to any person who's violated a Federal law would stand in the same shoes. It's a valid – You can do whatever civil penalties you want for as long as you want. If we go back to my initial question to Justice Sotomayor. Justice Sotomayor, really the answer to your question is the same. The answer to all of your questions is the same, which is that there is an analysis that the Court went through in Comstock where it took into consideration history. It took into consideration the nature of the fit between the purpose of Congress and the activity that it was regulated. It took into account the degree to which the State interests were accommodated. And it took into account the degree of attenuation between the regulation and the underlying offense. And it didn't open up Congress to say any offense you've ever committed means Congress owns you for life, it can do whatever you want. It has to pass through an analysis. But the Fifth Circuit never conducted that analysis except for believing that once the individual had completed military service, once the individual had completed his criminal sentence, Congress lost all authority. Roberts. I'm getting confused between two different assertions of the Federal interest. Earlier, you talked about the integrity of the military forces. They go back later, they think they should address the fact that people were engaging in criminal activities when in the military, they weren't found out, they weren't prosecuted, later on they can go back. But then you say that the interest that's at issue here is preventing recidivism. And that doesn't seem to have anything to do with the integrity of the military force. Well, it does because when the criminal law finds someone who has violated Federal criminal law, many of the purposes of the sanctions that are imposed on that individual are public protection purposes and anti-recidivism purposes. Most of the things that are done on supervised release fulfill those purposes. If those purposes were not validly connected to taking someone who's violated criminal law and imposing a suite of sanctions on them, then supervised release would apparently be beyond Congress's authority. It seems to me that when you say that, as your answer to the Chief Justice, you're no longer relying on the power to regulate the military. You're relying on some general Federal power to protect citizens against people who have committed any Federal crimes. And I don't see that enumerated power in the Constitution. Yes, I see a power to regulate the military. But your description, it has nothing to do with regulating the military. It has to do with protecting the public at large from people who have committed Federal crimes, military or not. As the Court has pointed out numerous times, including in Comstock, there is very little authority in the Constitution in an enumerated way for criminal law at all. All of criminal law, with the exception of a handful of instances that are specified in the Constitution, it comes in by virtue of the Necessary and Proper Clause. It's right, because it protects Federal functions. The Federal – the criminal law applicable to the armed forces protects the function of regulating the armed forces. But part of it is protecting the public at large from people who have committed a crime in the armed forces. How does that have anything to do with regulating the armed forces? That is inherent in taking somebody who violated Federal law and imposing appropriate sanctions on them for that violation. Kagan. Mr. Dreeben, it would help me in answering some of these questions if you went through the analysis on the assumption that this was instead a Commerce Clause case. So take the military out of it. What would the Necessary and Proper Analysis look like? It would look essentially the same, Justice Kagan. Somebody who violates Federal law that's premised on the Commerce Clause, say a sex offender who travels in interstate commerce with the intent to commit a sex offense, has placed himself within the regulatory authority of the Federal Government. Now, that individual can be criminally prosecuted for that violation, and that violation furthers Congress's interest in regulating interstate commerce. Congress could also decide, you know, for some of these sex offenders, criminal punishment is not the right approach. The right approach is mandate sex offender rehabilitative counseling. And it might discover that that's so effective for a class of offenders that it's going to apply that even to people whose offenses were committed before the law in question is passed. It can't punish those people based on retroactive legislation, but it can reach them with a civil remedial measure so long as it passes through the Comstock-type analysis of the Necessary and Proper Clause. Ginsburg. Mr. Dreeben, you said nothing about the opening argument in your brief, that the assumption that SORNA is something new added after is wrong because there were these predecessor laws that established a Federal requirement to register. Justice Ginsburg, I believe that the Fifth Circuit was wrong on that, too, as we described in our brief, Title 42, Section 14072i, 3 and 4, did, in our view, impose criminal punishment on Respondent for failing to register as a sex offender at the time he was in the military. We think the Fifth Circuit was wrong on that statutory analysis, but more fundamentally, the Fifth Circuit was wrong in thinking that it mattered whether he was under some sort of Federal criminal jurisdiction at the time that he was released from Federal custody. And if I could reserve the rest of my time. Thank you, Mr. Dreeben. Ms. Fuentes. Yes. Mr. Chief Justice, and may it please the Court. The government asked this Court to go beyond its holding in United States v. Comstock to allow the Federal government to reach back, after a Federal sentence has expired, to bring back into Federal control a person who has returned to the authority of the State. And I'm quite surprised to hear the government say that this is not a Comstock analysis. I'm not sure they stuck with that throughout the argument, but I think the Comstock factors are factors that this Court looks at quite frequently in doing any kind of a necessary and proper analysis. Sotomayor, go back to a primary question. Certainly. Are you challenging you didn't on appeal, but it seems as if you're accepting that the Federal government has the power to impose this requirement as part of a Federal sentence. I think that's correct. All right. Are you – if it's not part of a Federal sentence, but part of release, it's not announced at the sentence, but it's announced at the time the prisoner is put into supervised release or released from jail, do you think the government has the power to impose it then? In this case, on these facts, and based on the Federal statutes that exist today, the answer is yes. And the illustration, I think, is the way that SORNA works today. As the government mentioned – Well, SORNA today becomes part of the supervised release terms. Correct. I'm not talking about a SORNA today. Okay. I'm talking about just any prisoner who has been in jail, but it's not made, has not been paid a part of the punishment. I think the law permits a sentencing judge – I'm not talking about Congress, but a sentencing judge – to go back and impose additional conditions of supervised release. I don't know of that power, but do you have the statutory? 18 United States Code, section 3583. And 3583 permits the sentencing judge to change conditions of supervised release based on the factors that are considered important in sentencing in 18 United States Code, section 3553. So that power – I guess that what the government is saying, as I understand their argument, if you have the power to do it at that point, why can't you have the power to do it later? Are the same factors that compel permission for the government to do it then? It's because the way the statute works, even though it wasn't announced at sentence, supervised release is considered to be part of the sentence. So if I understand the question correctly, the reason the Court can go back and impose those conditions, and possibly the reason that Congress can go back and do it, is because those statutes that I've mentioned, 3583 and 3553, have given notice to the individual. Alito, I'm sorry. I didn't mean to interrupt your question. We're not talking about statutory authorization. We're talking about constitutional power. So if we start out with the example of registration for life being imposed as part of supervised release, part of the criminal sentence, then we go to an example where it is not part of the criminal sentence, but it is a civil requirement triggered by a separate civil proceeding for every Federal — every person convicted of a sex offense under Federal law. Now, if that were the setup statutorily, would that fall within Congress's power under Article I? I think not, but I want to qualify that, because it depends on what powers Congress is relying on. And let me give an example. I know the government was — a lot of the government's argument relies on this difference between criminal and civil consequences. Alito, we know what power they're relying on. Let's just look at the power that they're relying on here. It's the power to make rules for the regulation of the military. So part of their — the exercising their power to make rules for the regulation of the military, they impose a civil sex offender registration requirement for someone convicted of a sex offense under the Uniform Code of Military Justice. That does not, in your judgment, fall within Article I. It does if the person is still in the military or if he has been — or if he has committed a criminal offense and the prosecutorial power, the Federal power to prosecute him for that offense has not been exhausted. Yes, that can be done. How about if he's on supervised release? He's not on the military, but his entire sentence has not been completed. I think if he's still being supervised by the military, then I think it's likely that power exists. Breyer. Then why not this? Because Mr. Kibideau was not on supervised release. I'm sorry. Why not? I mean, look, this is — Thomas Reid Powell once said, if you can think of a thing that is inextricably related to another thing without thinking of the other thing, then you have the legal mind. And that seems to be this case. All right? So somehow I have to get out of my mind the ex post facto part, the potential violation of due process part, the equal protection part. Take that aside. Now I've got to just think about whether Congress has the power under the provision that Justice Alito said. Trying to do that, you know, and I've dissented in other cases on the other ground. But in just trying to do that, I think, well, the military, suppose they found a certain number of individuals, men or women, have unfortunate problems in the military. They discover there's a mental illness problem. The person's out of the military. But the law says you can go and tell the local mental health authorities about this person, even though he's no longer there. And suppose the person had a criminal problem in the military and was in prison. And suppose the law said, you know, you're the ones who got the situation where he unfortunately got into that problem, and you later on can go and tell authorities about his problem so they can take appropriate action. Now, if they can do that, why can't they have the power under Article I to say, really, you all have to register? Now, maybe there are other things, but you got this problem in the military. You were convicted in the military. You did it in the military. We turned you loose, and there you are. And we want, as part of our military regulation, to be able to tell authorities about you and to make you register according to State law. Now, no due process problem, I have to assume that away. No punishment, bad punishment problem, none of those, but it's a power, all right? Why not? Well, the power can't go to both of the examples that you've given. I don't see any problem with them giving notice. That does not impose a Federal obligation on an individual. So there is no power being exerted on the individual. They can have a public protection purpose and they can tell authorities who need to deal with the individual, and those authorities may have the power through State powers. Where you're leading me, because I'm not, so I'm worried about this case, but where you're leading me, because I'm worried about this case, but I'm worried about all kinds of cases, and all kinds of other cases. Suddenly a distinction arises that Congress can, in fact, do all kinds of things, having Federal authorities do this and that, but you couldn't make someone in a State you know, you can imagine a few that are coming into my mind. And so what I'm worried about is following this distinction into other areas. I don't think that is a problem, and I think the reason is, I disagree fundamentally with the government. I think necessary and proper analysis is important in each case, and it does bear similarities in each case. But depending on the power being relied upon, the analysis can be quite different. Commerce Clause is a very broad power. I can't say whether this sort of thing, depending on the Commerce Clause, would be right or would be wrong. Look at the power to make a uniform rule of naturalization. Alito, let me try this chain of reasoning out on you and get your reaction. We're starting out with the power of Congress to make rules for the regulation of the military. And one of the things that they want to do in making those rules is to make military installations acceptable to the local communities where they are located. They know from experience, for example, what's happened in Okinawa, that when you have military personnel who go, who commit sex offenses with people off base, it can cause tremendous opposition. And this is what happened here, not the opposition, but an offense involving a 15-year-old girl who lived off the base. So in order to ensure that there we don't have excessive civilian opposition to the location of military bases, we are going to do a number of things. One thing is we're going to criminally prosecute members of the military who commit these offenses. This will deter, this will incapacitate. But also, to provide further assurance to the community that these people are not going to be dangerous, we are going to require them to register. Now, maybe that's too attenuated, but I'd like to get your reaction. Why could Congress not do that under the Necessary and Proper Clause? Well, I think while that person is still within the criminal jurisdiction or any Federal jurisdiction, it could be done. I think that once that jurisdiction has been exhausted, once the criminal prosecution power has been exhausted, once the person has returned to the authority of the State, and I think that analysis is important always. Scalia, you don't have to go that far, though, to distinguish the example that Justice Alito just gave. This is not a statute which only requires him to register if he hangs around the military installation. This requires him to register anywhere, you know, in the wilds of Alaska. It's just not this case. And even if you would allow that and say it is a reasonable, it has a reasonable connection to the power to regulate the military, to say wherever he goes, he has to register is a different question, isn't it? I think it may well be. Now, that's exactly the problem for me, because the wilds of Alaska, you think, I think, and I think, I think, that sure, if there's a post office there, there's a post office there, then what the military is all right, they can mail a letter to be delivered to the local doctor to say, look, he has a problem. That seems to be okay. But you say it's not going to be okay to tell him he has to go and make that registration. At that point, what you've done is like Madison. I mean, it's an interpretation of the Commerce Clause that I think Madison might have wanted, which is you're reading a lack of power because of a civil rights problem. I mean, it's the difference between the two cases is really not the need, because we have to assume the need. The difference is the restriction on the individual. And it's that part that I'm suddenly worried about the Commerce Clause and every power in Article I being read with exceptions in the civil rights area, even though we have the amendments to protect the civil rights problems. I haven't thought of it that way, and that really isn't the argument that I'm making. I think that the military has jurisdiction. It's gotten information about this individual when it had power over him, and they can talk to whomever they care to about that. But whether we've never held, have we, that what the Federal Government can itself do under the Necessary and Proper Clause, it can impose upon individuals to do under the Necessary and Proper Clause. Aren't they two different? What is necessary and proper for the Federal Government itself to do is not necessarily necessary and proper for the Federal Government to require private individuals to do. I absolutely agree with that. And I think that this goes back to something that the government – well, it gives me an opportunity to address something the government has said about the Fifth Circuit's opinion, that it is a per se rule, and that is just incorrect. I have to disagree with that. And I have to disagree with it because everything the Fifth Circuit said was limited by these facts. These facts are what controls the case, and the Fifth Circuit took great care to make a very narrow ruling. And that ruling, the Fifth Circuit said, is that it's unconstitutional, SORNA's requirements, as applied to Mr. Kibito and others like him. It has no effect on Congress's ability to impose conditions on a prisoner's release from custody or on Congress's ability to affect the registration requirements for anyone who has been convicted after SORNA's enactment. So really, it is not a per se rule. It is a rule, maybe you call it per se, as it – as it affects people in Mr. Kibito's position. But I think that is very different from what the government is arguing.  Kagan. Kagan. But this, Ms. Lunti, is what I don't quite understand about the argument. This goes back to Justice Alito's original question. You seem to say that if this – if Congress passed a civil statute like this one, within the time that Mr. Kibito was in custody or within the time that he was under supervised release, that that would be appropriate. But I guess what I don't get is why the federal interests change, whether it's the day before he gets out of supervised release or the day after he gets out of supervised release. What in the federal interests shift based on that? Lunti, I'll answer that question first and come back to another. It's not a question, I don't think, of federal interest. It's a question of federal power. And you have to look at the individual power being exercised. And so the way I look at it is, what's the difference if the federal government makes a rule for a person in the military before – when he's in the military or after he gets out of the military? That's all the difference in the world. And that's our argument.  Kagan Well, I wasn't assuming that he was in the military while he was on supervised release. Lunti, I'm sorry. I didn't hear. Kagan I was assuming that he was out of the military in both these cases, but that you said while he was still serving his sentence, it would be appropriate for Congress to add this additional thing, but not after. Lunti, I think that's what I'm saying. Kagan In both cases, he's not in the military anymore. Lunti, Constitutionally, it can be. It can be all right constitutionally, depending on the statutory procedures that govern it. And the way that the Federal law operates now, the statutes that I mentioned, 3583 and 3553, the way those statutes operate is they give someone notice that their conditions of supervised release can be changed. And so there isn't an ex post facto problem with that. And there isn't a power problem with that, because the power to make the criminal offense and punish it still exists while that person is on supervised release. It has expired with respect to Mr. Kibitow. And I think that is one of the most important points in this case. And it goes along with the Comstock analysis. Alito But is it your argument that Congress lacks the power to impose supervised release after the date when the person leaves the military? Lunti, No. After the criminal sentence is served. I'm sorry. Maybe I didn't understand the question. Conco Someone sentenced to prison under the UCMJ, released, dishonorably discharged from the military. Can Congress say the person has to remain on supervised release for a longer period of time after he has returned to civilian status? Lunti, Not if, not unless it was imposed, that provision was imposed as part of the sentence or while he was still within the Federal power, before the Federal criminal jurisdiction expires. Alito See, I can understand why that might create, that might raise all sorts of constitutional arguments about notice and so forth, but I don't see how that, how that connects with the question whether Congress has the power to do it under Article I. Well, I'm not sure. Sotomayor Under the power to regulate the military. Lunti, I'm not sure I'm answering the question correctly, but that power doesn't last forever. The powers, there are some powers in the Constitution which may last longer than others. And the example I raised before was the rule of making uniform naturalization. That's a broader power, I think, than the military power. And we see that in the cases the government's mentioned and we've mentioned, the Tove case and the Kinsella case. Alito Well, you could be making the argument that the power to make rules for the military applies only to people who are in the military, and that once you're out of the military, the, that power does not permit Congress to do anything special to you. But you're not making that argument, I gather. Lunti, No. No, I'm not making that argument. And, again, it goes to the individual facts and the power asserted and the way the power operates always makes a difference. The example that the government gave with that board of inquiry and being able to bring people back in, I find that whole scenario very questionable. But there, there were people who were receiving military benefits, if I understood it. Sotomayor Sotomayor, if you wanted to protect against what Justice Breyer was concerned about, constricting the Commerce Clause, which has been, since Madison, more broadly defined than he did, or Justice Alito's example of ensuring that you're not closing off other things that can be done after someone leaves, that might be related to, like punishing a crime that you find out about afterwards. How would you write this opinion? Just the way the Fifth Circuit did, in its en banc opinion. Well, it wasn't really helpful because it doesn't give us a limiting principle. Like, and I don't know if it's possible, that if you're relying on just recidivism, Congress has to have an independent basis of power for the imposition of criminal or civil sanctions on someone? I'm not certain an opinion like that could be written. I think that the limits, the limitations that exist are on the narrowness of the way the opinion is written. But future cases, I don't think, can be decided that way. Certainly, principles can be articulated which help to limit. And I think the best you can say in terms of limiting principles is it's going to depend on the enumerated power upon which the government relies to impose this obligation. Well, how — I'm not sure that makes much sense. You're saying if they're relying on the enumerated power with respect to the military, they can do more than if they're relying on the enumerated power over interstate commerce? No. And if that's what you're understanding, I apologize. I did not mean that. Well, in what sense does it then depend upon which enumerated power they're invoking? Well, let me give an example that goes to the collateral consequence cases that the government raised. The government raises, for example, the Hudson case, where a person who is convicted of bank fraud is — both can be punished criminally and then can be debarred civilly from participating anymore with Federal government contracts. I think the words that were used in the Hudson case were no longer may have business doings with an insured bank. Okay? That has to be, I think, the spending power. The government can decide with whom it wants to do business. If it's dealing with an insured bank, then it can impose that civil consequence and it can do it. I don't want to use the word independently of. They may do it by reason of the criminal conviction, but there's an independent power to do it. That power doesn't exist here. And so it has to be. Roberts. They say it exists by virtue of the enumerated power to regulate the military forces. Well, I don't think it does. Perhaps I don't understand the question. Well, I'm trying to see why you're saying the enumerated power under the spending clause allows them to take this subsequent action, but the enumerated power under the military clause does not. Well, because the — I'm sorry. I would have thought that if you're arguing under the necessary and proper clause that you need an enumerated power that the necessary and proper clause is going to serve, but I don't see how it makes a difference which enumerated power you're talking about. I think it does turn on the nature of the power. I mean, could you use the military power to say you, Mr. Bank Fraud client, cannot contract with the government anymore? No. I get to ask the question. I'm sorry. You are so correct on that. I apologize. Breyer. No, but it's the military. It's the military that they're mostly — that they're relying on. Yes. So they say — I mean, the famous statement, I looked it up for you, let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate and not forbidden are fall within the necessary and proper clause. All right? The end is to protect the communities from those individuals in respect to those matters that they became dangerous with when they were in the military. Okay? That's the end. And is the means appropriate? They say, yes. They say, after all, the means here is notify them when you're moving around. And, therefore, is it forbidden? Well, we're not supposed to consider that part, so leave that out. But the others, they say, is okay. So that's the basic. Do you think maybe we should send this back to the Fifth Circuit? The government suggests that, because they didn't get it right in respect to what the previous statutes required. What about all that? Well, the Fifth Circuit did get it right with respect to the previous statutes. And the reason that the government wants to send it back is because they say that the Fifth Circuit relied on the fact that Mr. Kibito was unconditionally released. And as a matter of fact, he was unconditionally released. But they equate unconditional release with release free from a registration requirement. We have gone over that in great length in our brief. The government is simply wrong about that for the reasons that we state in our brief. And I can go into those if you want, if you'd like. Breyer, I just want to know what to do if I end up thinking they are right. Yeah. They are. What's your recommendation there on that assumption? I'm not saying I would, but I'm just saying on that assumption. I guess it depends on which assumption. The Fifth Circuit would not have changed its opinion in this case. Because Mr. Kibito, as a matter of fact, whether the government agrees or not, was not released on condition that he comply with sex offender registration requirements. You can see the difference between Mr. Kibito's release and the release of a person who is released on condition that he comply with requirements. And that is in 35. He was released on condition of State registration. Is it your argument dependent only on that there was no Federal registration requirement? No. It is dependent on whether that release was conditioned on his registration, and it wasn't. Today, when a person is released from custody on supervised release, it is a condition of that release under 3583 that he comply with sex offender registration requirements. What happens if he doesn't comply? He can go back to prison on the original conviction, because he was released on condition that he comply with Federal sex offender requirements. It just goes to the judge. It's by a preponderance of the evidence. That is not what happened here. Mr. Kibito was released not on any conditions. Now, the State may have imposed an independent obligation to register, but that was not a condition of his release. And so it is not the case, as a matter of fact, that he was released on condition. Sotomayor, you don't think Wetterling Act applied to him. Is that your argument? I'm sorry, I didn't understand. The Wetterling Act didn't apply to him? No, I don't think the Wetterling Act applied to him. At all? Correct. But even if it did, it was at its far removed from a registration requirement. It is a penalty, not a registration requirement. The State imposed a registration requirement. Wetterling did not. And if you just read, and I think that's what the Fifth Circuit did, they just read the statute, 14072 I-3 and I-4, it doesn't say a person who is required to register will follow, will suffer the following punishment. It says a person described in 4042d, a person who has been into a court-martial. If you look at the rest of 14072 and parts of 14071, there are provisions that say such and such person shall register. That is a registration requirement. I guess what I'm not understanding, Ms. Fuentes, is I understand the difference between a requirement of registration and a penalty for failing to register, but it's a little bit cutting, slicing the bologna thin. And if you think that he was, in any event, while he was undergoing his sentence subject to a penalty, it's a pretty minor exercise of Federal power, isn't it, to say that instead of making you just subject to a penalty for doing something, we're going to tell you you have to do it? I guess I don't. And the reason is it's not the degree of power exerted, it's whether the power exists. And once Mr. Kibito completed his Federal sentence, the military power which permitted him to be prosecuted and punished had expired. And so in some ways it's like there's Federal enclave jurisdiction on this side of the street where the base exists, where the Navy Yard exists, and things that happen here can be punished by the Federal Government. By just across the street, the exact same things can occur, and the Federal Government cannot punish it. So I think it is very careful to draw those fine lines, and I think it is essential when discussing issues of the enumerated powers because they are limited. I don't mean to move on fast. I did want to mention, I know my time is almost up, that we have offered an alternative ground for deciding the constitutional questions here, the effective date argument. I know we didn't raise it in the Fifth Circuit, but this Court has the authority to consider it, and we have put into our brief all the reasons that Mr. Kibito is not covered by SORNA to begin with. In the Sixth, Ninth, and Third Circuits, he could not be prosecuted under SORNA. And so that is an alternative basis that I think the Court can decide this case on. And if there are no other questions, I will cede the rest of my time. Roberts Thank you, counsel. Mr. Dreeben, you have three minutes remaining. Dreeben Thank you, Mr. Chief Justice. As I understand Respondent's argument, Respondent concedes that he could have been put under a lifetime requirement to register with State authorities and punished federally if he did not, if only that requirement had been imposed on him either at the time of sentencing or in a parallel civil proceeding that occurred while he was in the military. This case, therefore, reduces to a question of timing. The essential argument that Respondent is making is that Congress has had its authority expire because it didn't exercise it. There is some sort of notion that Congress must speak now or forever hold its peace. Scalia That's not unusual. When you're released from the military, for example, you're no longer subject to Congress's jurisdiction over the military. That's a matter of timing, too, isn't it? Dreeben Well, that's just wrong, Justice Scalia, because this Court made clear in United States X. Rel. Toth v. Quarles that if an individual has left the military but hasn't been prosecuted, they can't be court-martialed, but they can be prosecuted in an Article III court. Scalia Not for something that they've done after they left the military. That's a question of timing. Had they left the military when they committed this crime? If so, they can't be prosecuted under that power of the Federal Government. Dreeben But sex offender registration is a consequence of the military crime that was committed while they were in the military. It's a civil remedy that may, consistent with other constitutional provisions, be imposed retroactively. And this case comes down not to whether any member of the Court agrees with the ex post or whether there might be due process or other concerns out there. It comes down to whether Congress has Article I authority to say. Roberts And that's not limited. You've limited it to sex offenses, but the Congress could say it's important to us that people who serve in the military behave correctly even after they're released. So it is a Federal offense to do anything that violates State law for the rest of their lives. And your argument would say, well, that's part of their authority to regulate the military, and so it's okay. Dreeben Let me make two points about that, Mr. Chief Justice. First of all, a standard condition of Federal supervised release is that the individual shall not violate any Federal, State, or local law. And for many sex offenders, supervised release runs for life. Scalia Part of his sentence, that's part of the punishment imposed. You assert that this is not part of the punishment imposed. Dreeben I don't see any relevance that has to Article I authority. It has relevance to other constitutional provisions. So insofar as supervised release does contemplate this longstanding, continuous jurisdiction, that's a feature of Federal law that the Court ought to keep in mind in the way that it writes this opinion. But second, if Congress passed such a law, it's not that it has carte blanche to do that. It's just that there's no per se rule that says it can't. The Court would Roberts So your answer to my question is yes, Congress can do that. It can say anyone in the military is subject for the rest of their life to Federal jurisdiction. Whatever is a State law crime is a Federal crime. Dreeben Mr. Chief Justice, I'm not going to say no to that question because I don't want to foreclose options that Congress may decide is appropriate to pass. But the Court does not have to agree that that is constitutional, may I complete my sentence, in order to uphold this narrowly focused, tailored law that looks at a specific requirement that's directly tied to the nature of that crime. Roberts Thank you, counsel. Counsel, the case is submitted.